DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Eric U. Meddock ("appellant"), appeals from the judgment and sentence of the Ross County Court of Common Pleas, which convicted appellant of felonious assault, a second-degree felony. For the following reasons, we affirm.
 {¶ 2} On May 4, 2007, appellant was indicted on two counts of felonious assault in violation of R.C. 2903.11, both second-degree felonies. Appellant pleaded not guilty, and a jury trial commenced on January 16, 2008. Plaintiff-appellee, State of Ohio ("appellee"), called James Davis, Jr. ("James"), as its first witness.
 {¶ 3} James testified that, in the early morning hours of March 31, 2007, he was in a truck with his cousin, Joshua Dennewitz ("Josh"), and a friend, Abraham Freygang ("Abe"). They were traveling to a field located on property owned by Josh's grandfather. *Page 2 
They pulled onto an access road, which was also the driveway to appellant's residence, and stopped so that James could relieve himself. A car driven by appellant pulled in behind them. Appellant's girlfriend, Danielle Dennewitz ("Danielle"), who also lived at the residence, was in the car with him. Appellant got out of the car, smashed the back window of the truck, and began shouting at James. James saw that appellant was holding something, which was later identified as a shovel handle. Appellant hit James on the jaw with the shovel handle. Appellant then went into his house. When appellant returned, "he started coming back at" James, and, using a crowbar, Josh and Abe knocked the window out of a white van parked nearby. (Tr. 81.) James was transported to the emergency room in an ambulance. He suffered a broken jaw, "a lump on the head," and a bruise on the leg. (Tr. 82.)
 {¶ 4} On cross-examination, James denied knowing appellant. He also denied knowing that appellant and Danielle lived at that house.
 {¶ 5} Josh Dennewitz also testified. Josh was not sure whether appellant broke out the truck window before hitting James. Seeing that appellant had some kind of stick in his hand, Josh removed a crowbar from a toolbox in his truck. Josh stated that he "proceeded after" appellant "to try to get him away from James and Abe." (Tr. 99.) He said that he and appellant "swung at each other for a little bit." (Tr. 99.) In an effort to "distract" appellant, Josh "started busting the windows out of his van." (Tr. 99.) After they "swung at each other a little bit more," appellant went back into the house. (Tr. 99.)
 {¶ 6} On cross-examination, Josh testified that he had had a past disagreement with appellant and that he had a good relationship with Danielle, his cousin. Josh *Page 3 
denied knocking out the windows on the first floor of the residence a month prior to this incident and denied admitting as much to Danielle. He admitted, however, that he "didn't agree" with Danielle's relationship with appellant. (Tr. 106.) While James had testified that the truck was about 20 feet from the house when they stopped, Josh testified that it was about 100 feet from the house.
 {¶ 7} Abraham Freygang testified that appellant broke out the truck window before arguing with James and that James had done nothing to provoke appellant. Abe said that appellant "didn't want to quit. Josh didn't quit. He kept arguing too. He didn't help anything." (Tr. 115.) Abe believes that Josh broke the van windows while he was calling the sheriff's office.
 {¶ 8} Corporal Jason Gannon of the Ross County Sheriff's Department testified that he responded to a call concerning a fight at about 4:00 a.m. on March 31, 2007. Upon arriving at the scene, Gannon saw Josh with a crowbar and ordered him to drop it. Gannon testified that appellant told him that he had had some vandalism at his residence "and he believed that they had come back to — do damage to the residence again." (Tr. 126.) Corporal John Winfield also testified concerning the investigation. Thereafter, appellee rested its case.
 {¶ 9} Danielle Dennewitz testified on appellant's behalf. Danielle confirmed that she and appellant, the father of her child, live together in a home owned by her grandfather, who also owns the land behind the home. She and appellant stopped at the residence that morning to drop some garden supplies off, but did not intend to spend the night there. As they were unloading mulch, Josh drove the truck, with James and Abe as passengers, past the house and beeped the horn. As she and appellant *Page 4 
started to drive away, they saw the truck drive through a neighbor's field, and then she and appellant drove back to the house. They saw the truck in the driveway and pulled in behind it. As soon as appellant got out of the car, Josh "grabbed a crowbar." (Tr. 157.) She and appellant told them to leave "then Josh came running around the car with the crowbar." (Tr. 158.) Appellant picked up a stick from a pile of firewood. Danielle went into the house, heard glass shattering, and saw Josh hitting the windows out of the van.
 {¶ 10} On cross-examination, Danielle said that she thought James "was trying to get something to use to defend himself or to inflict harm." (Tr. 165.) She admitted, however, that James did not do anything to attack appellant and "pretty much got in the way of the battle between" Josh and appellant. (Tr. 166.) Thereafter, appellant rested his case.
 {¶ 11} The trial court instructed the jury on two counts of felonious assault: the first, knowingly causing physical harm with a deadly weapon; and the second, knowingly causing serious physical harm. The jury found appellant not guilty on Count 1 and guilty on Count 2.
 {¶ 12} Appellant filed a timely appeal and raises the following assignment of error:
 [APPELLANT] WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF SERIOUS PHYSICAL HARM REGARDING COUNT TWO OF THE INDICTMENT ALLEGING FELONIOUS ASSAULT AND DEFENSE COUNSEL NEGLECTED TO MOVE FOR AN ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AT THE CLOSE OF THE STATE'S CASE. *Page 5 
 {¶ 13} Through his assignment, appellant asserts that he was denied his right of effective trial counsel. For purposes of review, the United States Supreme Court has established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Here, we begin with the second prong.
 {¶ 14} The premise underlying appellant's argument is that his counsel should have moved for acquittal following the close of appellee's case because appellee failed to present sufficient evidence of serious physical harm. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the jury.Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is *Page 6 
to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).
 {¶ 15} R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." R.C. 2901.01(A)(5) further defines "serious physical harm to persons" as:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 {¶ 16} Here, appellant argues that there was no evidence of "serious physical harm." In his view, James' broken jaw, lump on the head, and bruised leg do not constitute serious physical harm because there was no risk of death, incapacity, disfigurement or acute pain. Instead, James "was at the hospital a mere six hours and only given pain medication for his injuries."
 {¶ 17} Appellee notes, however, that James not only received treatment at a local hospital, but also saw a specialist a number of times. From this testimony, as well *Page 7 
as the medical records admitted into evidence, appellee argues, a reasonable juror could find that the state had proven the element of serious physical harm. We agree.
 {¶ 18} The evidence presented by appellee, if believed, showed that appellant hit James in the face with a shovel handle, broke his jaw, caused bruising or lacerations to his neck, head, and calf, and caused him pain. He was transported to an emergency room in an ambulance, treated with pain medication, and released. He also had follow-up consultations with a specialist to monitor the healing. While James' injuries could undoubtedly have been worse, the evidence was sufficient for the jury to reasonably conclude that appellant's actions caused serious physical harm. Therefore, we discern no reasonable probability that, even if appellant's trial counsel had moved for acquittal, the outcome would have been different.
 {¶ 19} Having found no grounds for appellant's assertion that his trial counsel was ineffective, we overrule his assignment of error. We affirm the judgment of the Ross County Court of Common Pleas.
 JUDGMENT AFFIRMED. *Page 8 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1